**HARMON HOMES, INC., Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 4, 2004.

Decided May 9, 2006.

Aaron M. DeAngelo, Stroudsburg, for petitioner.

Ronald H. Skubecz, Sr. Deputy Attorney General, Harrisburg, for respondent.

---

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Harmon Homes, Inc., petitions for review of an order of the Board of Finance and Revenue, sustaining the Department of Revenue's (Department) calculation of the transfer tax owed upon a conveyance of land from Harmon Homes to Gerald L. Robbins, Jr. Because Robbins also contracted for the construction of a home on the land received from Harmon Homes, the Department combined the value of both contracts to produce the amount of tax owed. We affirm the Board.

The parties have stipulated to the facts relevant to this petition.[1] On February 4, 2002, a deed was filed in Monroe County to record a transfer of real estate from Harmon Homes[2] to Robbins that took place on January 28, 2002. The deed identified the subject realty as Lot Numbers 277 and 278, "Plotting of Wilderness Acres," Middle Smithfield Township, Monroe County, and stated that the consideration for the conveyance was $40,000. At the deed's recording, a realty transfer tax of $400 was

paid in accordance with the relevant provisions of the Tax Reform Code of 1971, commonly referred to as the Realty Transfer Tax Act (Act).[3] The same day Lots 277 and 278 were conveyed, January 28, 2002, Robbins entered into a contract with P.P.F. Homes, Inc., an affiliate of Harmon Homes, for the construction of a two-story "Nantucket" home, at a cost of $138,000, on Lots 277 and 278.

On February 24, 2002, Robbins conveyed Lots 277 and 278 to One Stop Realty, Inc., for $1. At the recording of the deed on March 4, 2002, the parties presented a Statement of Value attesting that the transfer was a "turnkey project" and as such not taxable.[4] Upon completion of the construction of the Nantucket home on Lots 277 and 278, on October 4, 2002, One Stop Realty reconveyed Lots 277 and 278 to Robbins for $1. At the recording of the deed transferring the realty to Robbins, the parties again claimed the transfer was a turnkey project and not taxable.

On March 21, 2003, the Department notified Harmon Homes that it owed additional tax on the January 28, 2002, transfer of Lots 277 and 278 to Robbins.[5] The Department explained that the real estate

---

1. The facts in 487 F.R.2004 are similar to the facts in six other cases that have been consolidated for purposes of this appeal; the legal issues are the same. The case at 487 F.R. 2004 is representative of all the cases and the parties have agreed that this Court's decision in 487 F.R.2004 will apply to all of the consolidated cases.

2. Harmon Homes, Inc., is a Pennsylvania corporation with a mailing address in East Stroudsburg, Pennsylvania.

3. Article XI–C of the Tax Reform Code of 1971, entitled "Realty Transfer Tax," Act of March 4, 1971, P.L. 6, as amended, added by the Act of May 5, 1981, P.L. 36, as amended, 72 P.S. §§ 8101–C –8113–C.

4. 61 Pa.Code § 91.162, relating to turnkey projects, provides:

A transfer of realty to a developer or contractor who is required by contract to reconvey the realty to the grantor after making contracted-for improvements to the realty is not taxable if no beneficial interest is transferred to the developer or contractor. The reconveyance to the grantor is also not taxable.

5. In each case, except 491 F.R.2004, the Department of Revenue Notice of Determination imposed the additional tax on the deed from Harmon Homes to the individuals who had signed a purchase order with P.P.F. Homes. In 491 F.R.2004, the additional tax was imposed on the deed from the individual who had signed a purchase order with P.P.F. Homes to One Stop Realty.

transferred on January 28, 2002, had a value of $178,000, not $40,000 as reported, because of the executory building contract between Robbins and P.P.F. Homes[6] signed the same day Robbins purchased Lots 277 and 278. Harmon Homes appealed. The Department's Board of Appeals and, next, the Board of Finance and Revenue sustained the Department's imposition of the additional tax. This appeal followed.

On appeal,[7] Harmon Homes presents one issue for our consideration. It contends that the value of the building contract executed by Robbins was irrelevant to his purchase of land from Harmon Homes because Robbins did not own Lots 277 and 278 while the Nantucket home was being constructed. It contends that Robbins' conveyance to One Stop Realty separated the value of the executory contract from the value of the real estate conveyed by Harmon Homes to Robbins and, thus, it was error for the Department to combine the value of both contracts in calculating the amount of the realty transfer tax. The Department counters that the only way to separate the value of the executory contract from the value of the land transfer would have been for either Robbins or P.P.F. Homes to have rescinded the construction contract on or before the date of the land transfer from Harmon Homes to Robbins. Neither party did so.

We begin our analysis with a review of the applicable statutory law. Section 1102–C of the Act taxes

> [e]very person who makes, executes, delivers, accepts or presents for recording any document ... at the rate of one per cent of the value of the real estate represented by such document.

72 P.S. § 8102–C. The "document" presented for recording is one that transfers title to real estate.[8] The value of the real estate "represented" by that document is generally the consideration recited in the document being filed.[9] However, where a

---

6. Harmon Homes and P.P.F. Homes have the same owners and officers.

7. Appeals to this court from decisions of the Board of Finance and Revenue are heard *de novo* based on the record created before this Court or on stipulated facts. Pa. R.A.P. 1571(h); *Farda v. Commonwealth,* 849 A.2d 297, 299 n. 4 (Pa.Cmwlth.2004).

8. Section 1101–C of the Act defines a "transaction" as, "[t]he making, executing, delivering, accepting, or presenting for recording of a document." 72 P.S. § 8101–C. It defines "document," in relevant part, as:

> [a]ny deed, instrument or writing which conveys, transfers, devises, vests, confirms or evidences any transfer or devise of title to real estate, but does not include wills, mortgages, deeds of trust or other instruments of like character given as security for a debt and deeds of release thereof to the debtor, land contracts whereby the legal title does not pass to the grantee until the total consideration specified in the contract has been paid or any cancellation thereof unless the consideration is payable over a

period of time exceeding thirty years or instruments which solely grant, vest or confirm a public utility easement.
72 P.S. § 8101–C.

9. Section 1101–C of the Act, in defining "value," establishes the rules for determining value as follows:

> (1) In the case of any *bona fide sale of real estate at arm's length for actual monetary worth, the amount of the actual consideration therefor,* paid or to be paid, including liens or other encumbrances thereon existing before the transfer and not removed thereby, whether or not the underlying indebtedness is assumed, and ground rents, or a commensurate part thereof where such liens or other encumbrances and ground rents also encumber or are charged against other real estate: Provided, *That where such documents shall set forth a nominal consideration, the "value" thereof shall be determined from the price set forth in or actual consideration for the contract of sale;*
> (2) in the case of a gift, sale by execution upon a judgment or upon the foreclosure of a

"transaction" involves not just a transfer of real property but also an agreement to purchase the construction of a building, the taxable "value" is determined by looking at the consideration required under both contracts. This methodology is authorized expressly by the Act, which states that "value," is

> the *actual consideration* for or actual monetary worth of *any executory agreement for the construction of buildings,* structures or other permanent improvements to real estate *between the grantor and other persons existing before the transfer* and not removed thereby or between the grantor, the agent or principal of the grantor or a related corporation, association or partnership and the grantee existing before or effective with the transfer.

Section 1101–C of the Act, 72 P.S. § 8101–C (Definitions—"Value" (4)) (Fourth Valuation Method). The Department's regulation also makes clear that the value of the realty being transferred also includes the consideration for a construction contract that is "effective with the transfer or ...

prior to the transfer....." 61 Pa.Code § 91.137.[10]

In *Pennsylvania Builders Association v. Department of Revenue,* 122 Pa.Cmwlth. 493, 552 A.2d 730 (1989), this Court considered whether contracts for improvement to real estate are properly subject to the realty transfer tax. The taxpayers argued that an agreement to make future improvements to land does not convey an interest in real estate and, thus, should not be subject to the transfer. We disagreed, concluding that the Fourth Valuation Method in Section 1101–C of the Act was intended to tax "all new home sales ... uniformly on the full monetary worth of the interest in real estate conveyed." *Id.* at 735. We rejected the taxpayers' argument that the principle of strict construction of taxing statutes required a different result. We observed that only where there is a reasonable doubt as to the proper construction of the statute is it construed in favor of the taxpayer. Thus, we concluded that the "full value of the real estate" for realty tax transfer purposes

mortgage by a judicial officer, *transactions without consideration or for consideration less than the actual monetary worth of the real estate,* a taxable lease, an occupancy agreement, a leasehold or possessory interest, any exchange of properties, or the real estate of an acquired company, *the actual monetary worth of the real estate determined* by adjusting the assessed value of the real estate for local real estate tax purposes for the common level ratio of assessed values to market values of the taxing district as established by the State Tax Equalization Board, or a commensurate part of the assessment where the assessment includes other real estate;

(3) in the case of an easement or other interest in real estate the value of which is not determinable under clause (1) or (2), *the actual monetary worth of such interest.*

72 P.S. § 8101–C (emphasis added). As can be seen, the consideration in the contract usually determines the value unless it is obvi-

ous that the consideration was far less than true value.

10. The Department's regulation tracks the statute; it states in relevant part:

> The value of realty also includes the value of contracted-for improvements to the realty, such as a building to be made as a permanent addition if under the construction agreement the grantor or grantor's affiliate is contractually obligated to the grantee to make the contracted-for improvements to the realty granted upon payment of the agreed consideration or a contractor is contractually obligated to the grantor and to the grantor's successors in interest to make contracted-for improvements to the realty granted upon payment of the agreed consideration and *the contractual obligation is effective with the transfer or was effective prior to the transfer and not removed thereby.*

61 Pa.Code § 91.137 (emphasis added).

must include the consideration paid for the home building contract as well as that paid for the land. *Id.*

Harmon Homes contends that *Pennsylvania Builders* is not dispositive here because of the length of time between the conveyance from Harmon Homes and completion of the Nantucket home and because One Stop Realty owned Lots 277 and 278 during the construction project. It argues that these differences make the transaction a "turnkey project" exempt from taxation under the Department's own regulation.

A "turnkey project" is exempt from the transfer tax under the Department's regulation, which states:

> A transfer of realty to a developer or contractor who is required by contract to reconvey the realty to the grantor after making contracted-for improvements to the realty is not taxable if no beneficial interest is transferred to the developer or contractor. The reconveyance to the grantor is also not taxable.

61 Pa.Code § 91.162. A month after Robbins purchased Lots 277 and 278, he transferred the lots to One Stop Realty that built the Nantucket home in place of P.P.F. Homes. The transfers from Robbins to One Stop and back to Robbins were exempted from taxation as a turnkey project. However, it does not follow that because one part of the transaction by which Robbins acquired his home and land fit the exemption for a turnkey project,

that the entire transaction can be considered a turnkey project.[11]

Further, Harmon Homes' attempt to distinguish this case from *Pennsylvania Builders* is unavailing. For tax purposes, the relevant document was the deed dated January 28, 2002, and recorded February 4, 2002, by which Harmon Homes conveyed Lots 277 and 278 to Robbins. Because on that same day, Robbins signed a construction contract with an affiliate of Harmon Homes, the Fourth Valuation Method of Section 1101–C of the Act treats the transaction as the sale of a new home that must be considered in determining the value of the transfer.[12] The intervening transfer to One Stop Realty had no effect on the value of the transaction between Harmon Homes and Robbins that took place on January 28, 2002. When the deed for the transfer from Harmon Homes to Robbins was recorded, the executory building contract was in effect and, thus, the value of the realty subject to the recording included both the value of the Nantucket home and the value of Lots 277 and 278. Accordingly, the Department properly imposed the additional realty transfer tax upon the January 28, 2002, transaction.

For these reasons, the order of the Board of Finance and Revenue is affirmed.

## ORDER

AND NOW, this 9th day of May, 2006, the order of the Board of Finance and Revenue, dated May 25, 2004, is affirmed.

---

**11.** Harmon Homes' argument that the turnkey exception is rendered meaningless by the Department's actions also lacks merit. To the contrary, the regulation was properly applied to the transfer by Robbins to One Stop Realty and back again.

**12.** Under the Fourth Valuation Method in Section 1101–C, "the actual consideration for ... any executory agreement for the construc-

tion of buildings ... between the grantor and other persons existing before the transfer and not removed thereby," is subject to taxation. 72 P.S. § 8101–C. There is no reasonable doubt about this language and, thus, we reject the effort by Harmon Homes to have the Act construed in its favor. This principle of statutory construction is inapplicable, as was found in *Pennsylvania Builders.*

Unless exceptions are filed within thirty (30) days in accordance with the provisions of Pa. R.A.P. 1571(i), this order shall become final.